

**ORIGINAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| THE UNITED STATES OF AMERICA ex rel. KENNETH KARLIN, | 08 CIV 7826 |
|---|---|
| Plaintiff, | No. C 08-___ |
| v. | COMPLAINT AND JURY DEMAND |
| NOBLE JEWELRY HOLDINGS LIMITED, DAVID G. LLC formerly known as CHAD ALLISON DESIGNS, LLC, CHAD ALLISON CORPORATION, NOBLE JEWELRY LIMITED and JOHN DOES 1-100, | FILED <u>IN CAMERA</u> AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2) |
| | JURY TRIAL DEMANDED |
| Defendants. | DO NOT PLACE IN PRESS BOX DO NOT ENTER ON PACER |

## INTRODUCTION

1.  This is an action commenced by *qui tam* relator Kenneth Karlin ("Relator") on behalf of himself and in the name of the United States Government ("United States") under the provisions of the False Claims Act, 31 U.S.C. § 3729 *et seq*. (the "False Claims Act"). This action seeks to recover damages sustained by and penalties owed to the United States as a result of an ongoing conspiracy and scheme to evade payment of U.S. customs duties. The duties are owed in connection with the importation of goods into the United States by a foreign jewelry manufacturer, defendant Noble Jewelry Holdings, Limited ("Noble"), and certain of its U.S. customers, two of which are wholly-owned domestic subsidiaries of Noble.

2.  The scheme involves the filing of customs declarations and corresponding invoices which fraudulently understate the transaction value of the goods being imported. The false

customs filings decrease defendants' obligation to pay U.S. import duties. Such duties comprise an "obligation to pay money" to the United States within the meaning of the False Claims Act.

## JURISDICTION AND VENUE

3. This action arises under the False Claims Act, 31 U.S.C. § 3729 *et seq.*

4. Jurisdiction over this action is conferred upon this Court by 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 3130 in that this action arises under the laws of the United States.

5. Venue lies in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b), (c) and (d) in that defendants reside and/or transact and transacted business in this District.

## PARTIES AND OTHER ENTITIES

6. Relator Kenneth Karlin ("Relator") is a resident of Nassau County, New York and is a citizen of the United States. Relator brings this suit on behalf of the United States, inclusive of The U.S. Department of Homeland Security, Bureau of Customs & Border Protection ("CBP"), pursuant to 31 U.S.C. § 3730(b). From approximately August 2006 until approximately December 2007, Relator was employed as General Manager of defendant Chad Allison Corporation. Relator brings this action based on his direct, independent, personal knowledge and also on information and belief. Relator is an original source of this information provided to the United States.

7. Defendant Noble Jewelry Holdings Limited ("Noble") is a corporation organized and existing under the law of the Cayman Islands, with its principal place of business in Hong Kong, The People's Republic of China. Noble is an international jewelry designer and manufacturer which markets its products to more than 600 wholesalers and retailers globally, including in the United States, Europe, the Middle East, China and other Asian-Pacific countries. Noble has more than 1,600 employees, and "branch offices" in New York, London, Madrid, and

Tokyo. Noble's stock trades publicly on the Main Board of The Hong Kong Stock Exchange (stock code 475), where it has a market capitalization of HK$272 million (US$34.9 million). In fiscal 2008, Noble reported total sales of HK$762.0 million (US$97.7 million), including HK$161.8 million (US$20.7 million) in sales to the United States.[1] Noble admits to having a continuous and systematic business "presence" in the United States through, *inter alia*, its "branch" office New York.

8.      Defendant David G. LLC, formerly known as Chad Allison Designs LLC ("Chad Allison Designs"), is a closely-held corporation organized and existing under the laws of the State of Arizona with its principal place of business at 6900 Camelback #902, AZ 85251. Prior to April 2006, Chad Allison Designs was a wholesaler and distributor of fine jewelry and was one of Noble's largest U.S. customers. In or about April 2006, Noble acquired the assets and liabilities of Chad Allison Designs. Subsequently, in or about June 2006, Chad Allison Designs changed its name to "David G. LLC."

9.      Defendant Chad Allison Corporation ("Chad Allison Corp.") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 576 Fifth Avenue, Room 904, New York, NY 10036. Chad Allison Corp. is a wholly-owned and controlled subsidiary of defendant Noble. Chad Allison Corp. was incorporated by Noble in March 2006 for the purpose of serving as a vehicle for the continuation of the business of Chad Allison Designs, which Noble had recently acquired. Chad Allison Corp. is a wholesaler and

---

[1]      Noble's website, which contains Noble's public securities filings and detailed information about the company, is located at http://www.noble.com.hk/home.jsp.

distributor of fine jewelry. *See* http://www.chadallison.com. Chad Allison Corp. is one of Noble's largest U.S. customers.

10. Defendant Noble Jewelry Limited ("Noble-NY") is a corporation organized and existing under the laws of the State of New York with its principal place of business located at 576 Fifth Avenue, Room 904, New York, NY 10036, where Noble-NY shares an office with Chad Allison Corp. Noble-NY is a wholly-owned and controlled subsidiary of defendant Noble. Noble-NY is engaged in the business of importing and distributing fine jewelry, and is one of Noble's largest U.S. customers.

11. The defendants named in paragraphs 8-10 above are collectively referred to herein as the "Customer Defendants."

12. Defendants John Doe 1-100 are additional U.S. customers of defendant Noble which have conspired with Noble to participate in, and which have participated in, the scheme to evade payment of U.S. customs duties alleged herein.

## FACTUAL ALLEGATIONS

13. Under United States laws and regulations relating to the payment of customs duties, when a shipment reaches the United States, the importer of record is required to complete and file certain customs entry documents with CBP. The required entry documents include a customs declaration on CBP Form 7501 ("CBP 7501") and a corresponding "commercial invoice." 19 CFR. 142.3a.

14. The CBP 7501 declaration requires that the importer of record or its authorized agent swear under oath that:

4

the merchandise was obtained pursuant to a purchase or agreement to purchase and that *the prices set forth in the invoices are true* OR was not obtained pursuant to a purchase or agreement to purchase and *the statements in the invoices as to value or price are true* to the best of my knowledge and belief. I also declare that *the statements in the documents herein filed fully disclose to the best of my knowledge and belief the true prices*, values, quantities, rebates, drawbacks, fees, commissions, and royalties and are true and correct, and that all goods or services provided to the seller of the merchandise either free or at reduced cost are fully disclosed.

*See* 19 U.S.C. §1485; http://forms.cbp.gov/pdf/CBP_Form_7501.pdf.

15. The corresponding commercial invoice is required to "set forth . . . *The purchase price* of each item in the currency of the purchase, if the merchandise is shipped in pursuance of a purchase or an agreement to purchase; . . ." 19 CFR 141.86(a)(5).

16. This action is brought because from at least as early as August 2006 to the present, defendants have engaged in a conspiracy and scheme to evade payment of appropriate U.S. import duties in connection with shipments of Noble's goods to the Customer Defendants and the John Doe Defendants. The scheme involves the filing of CBP 7501s and corresponding invoices which fraudulently understate the transaction value of the goods being imported.

17. Pursuant to the scheme, Noble prepares and issues two invoices – a correct invoice and a fraudulent invoice – with respect to each shipment of goods. The correct invoices set forth the true agreed-upon prices of the goods being shipped. The fraudulent invoices understate the prices of the goods being shipped by 33.33%.

18. Noble transmits the correct invoices to the customer by email.

19. Meanwhile, Noble packs the fraudulent invoices with the shipments in question, then files the fraudulent invoices, or causes them to be filed, with CBP. Noble also files

or causes to be filed with CBP correspondingly false CBP 7501s in connection with each shipment. The correct invoices are neither filed with nor otherwise disclosed to CBP.

20. Reflecting the fact that the emailed invoices are the correct ones, the Customer Defendants regularly book receipt of the goods received and remit payment to Noble based upon the prices contained in the emailed invoices. The Customer Defendants disregard the fraudulent invoices packed with the shipments. The only function of the fraudulent invoices packed with the shipments is to deceive CBP and thereby to reduce Noble's import duties. The fraudulent invoices serve no commercial purpose.

21. Except for the fact that the prices set forth in the fraudulent invoices are understated by 33.33%, the fraudulent invoices are in all material respects identical to the correct invoices. The fraudulent invoices contain the same shipment numbers, lot numbers, airway bill numbers, invoice dates, payment due dates, and descriptions of the items and quantities shipped as the correct invoices. In other words, there is no question that the fraudulent invoices relate to the same shipments.

22. Defendants have colluded, conspired and agreed with one another to engage in the scheme alleged herein.

23. The collusion and agreement of the Customer Defendants to engage in the scheme is evidenced by the fact that, as alleged above, the Customer Defendants regularly book receipt of goods shipped to them by Noble and remit payment to Noble based upon the prices contained in the emailed invoices, while ignoring the prices in the invoices packed with Noble's shipments.

24. The collusion and agreement of the Customer Defendants is also evidenced by the fact that the Customer Defendants have falsely corroborated Noble's customs filings with CBP. Specifically, from time to time, CBP has contacted the Customer Defendants and requested additional copies of certain invoices in order to substantiate entry documents filed or caused to be filed by Noble. In furtherance of the conspiracy, each of the Customer Defendants has responded to such requests by providing CBP with copies of the fraudulent invoices, concealing from CBP the correct invoices.

25. By virtue of the scheme alleged herein, defendants have evaded payment of substantial U.S. import duties over the course of the last several years.

26. Imports of foreign goods are subject to the Harmonized Tariff Schedule of the United States ("HTSUS"), 19 U.S.C. § 1202. The jewelry shipped by Noble is subject to Chapter 71, section 7113.19 of the HTSUS, which provides for tariffs of at least 7% for "[a]rticles of jewelry and parts thereof, of precious metal . . .".

27. According to Noble's annual reports and other public disclosures, from 2004 through the end of 2008 Noble shipped US$88 million worth of jewelry to customers in the United States. At an average import tariff rate of at least 7%, CBP should have collected at least US$6 million in U.S. duties on such goods. However, by virtue of the scheme alleged herein, it is believed that defendants have evaded payment with respect to at least 33.33% of such amount, or at least US$2 million.

28. In addition, defendants have over the course of this period filed or caused to be filed hundreds of "false records or statements" with CBP in the form of CBP 7501s and invoices which fraudulently understated the prices of the goods being imported.

7

29. The scheme alleged herein is ongoing.

30. Relator has direct, personal knowledge of the scheme alleged herein by virtue of his former employment as General Manager of defendant Chad Allison Corp.

31. Relator discovered the scheme alleged herein during his first week of employment in or about August 2006. In particular, when being trained for his job responsibilities, Relator was instructed by the outgoing General Manager (whom Relator was replacing) to disregard the invoices that came packed with the shipments from Noble – and which had been filed with CBP – and, instead, to book receipt of the goods and to remit payment to Noble on the basis of the emailed invoices. The outgoing General Manager explained to Relator how the scheme worked and, specifically, that the reason for the scheme was to evade payment of proper U.S. customs duties. The outgoing General Manager also stated that the scheme was "standard procedure" and the "way it has always been done" at Chad Allison Corp. and previously at Chad Allison Designs.

32. In early 2007, Relator raised questions about the propriety of the scheme with his direct supervisor, Mr. Daniel Tse ("Tse"). Tse, who travels frequently to the United States to visit the office of Noble subsidiaries Noble-NY and Chad Allison Corp., is listed on Noble's website as part of Noble's "Management" and Noble's "Manager of Business Development." Tse responded to Relator's questions by telling Relator that the conduct of the scheme was "not your concern."

## FIRST CLAIM FOR RELIEF
## VIOLATIONS OF 31 U.S.C. § 3729(a)(1)
### (Presenting False or Fraudulent Claims to the United States)

33. Relator incorporates the allegations contained in paragraphs 1 through 32 above.

34. Defendants presented to the United States for approval the false and/or fraudulent claims described above, with knowledge they were false and/or with deliberate ignorance of their truth or falsity, and/or with reckless disregard for their truth or falsity.

35. The United States has sustained damages as a result of defendants' false claims and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each false claim.

## SECOND CLAIM FOR RELIEF
## VIOLATIONS of 31 U.S.C § 3729(a)(2)
### (Causing to Be Presented False or Fraudulent Claims to the United States)

36. Relator incorporates the allegations contained in paragraphs 1 through 35 above.

37. Defendants made, used or caused to be made or used, the false records and statements described above to get its false and fraudulent claims approved by the United States, with knowledge they were false and/or with deliberate ignorance of their truth or falsity, and/or with reckless disregard for their truth or falsity.

38. The United States has sustained damages as a result of defendants' false records and statements and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each false claim.

## THIRD CLAIM FOR RELIEF
## VIOLATIONS OF 31 U.S.C § 3729(a)(7)
### (False Record to Avoid an Obligation to Pay Money to the United States)

39. Relator incorporates the allegations contained in paragraphs 1 through 38 above.

40. By virtue of the conduct described above, defendants made or used false records and statements to conceal, avoid or decrease obligations to pay or transmit money to the United States, with knowledge that they were false, and/or with deliberate ignorance of their truth or falsity, and/or with reckless disregard for their truth or falsity.

41. The United States has sustained damages as a result of defendants' false records and statements in an amount to be determined at trial.

42. By virtue of the false records or statements made by the defendants, the United States suffered damages and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each false claim.

### FOURTH CLAIM FOR RELIEF
### VIOLATION OF 31 U.S.C. § 3729(a)(3)
### (Conspiring to Defraud the United States)

43. Relator incorporates the allegations contained in paragraphs 1 through 42 above.

44. Defendants conspired to defraud the United States by avoiding or decreasing obligations to pay or transmit money to the United States.

45. The United States has sustained damages as a result of the conspiracy described above in an amount to be determined at trial.

46. By virtue of the false records or statements made by the defendants, the United States suffered damages and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each false claim.

**WHEREFORE**, Relator, on behalf of himself and the United States Government, prays that judgment be entered and against Defendants as follows:

a. That the United States Government be awarded three times the amount of damages sustained because of Defendants' actions, plus a civil penalty of $11,000 for each false document presented or caused to be presented with CBP, and the costs of this action, with interest, including the costs to the United States Government for its expenses related to this action;

b. That the Relator be awarded all costs incurred, including reasonable attorneys' fees;

c. That, in the event the United States continues to proceed with this action, the Relator be awarded an amount that the Court decides is reasonable for bringing this action of at least 15% but not more than 25% of the proceeds of the action or the settlement of the claim;

d. That, in the event the United States does not proceed with this action, the Relator be awarded an amount that the Court decides is reasonable for collecting the civil penalty and damages, which shall be not less than 25% nor more than 30% of the proceeds of the action or settlement of the claim.

e. That the Relator be awarded prejudgment interest;

f. That a trial by jury be held on all issues;

g. An Order granting such other relief as this Court deems just and appropriate.

**JURY TRIAL DEMANDED**

Relator, on behalf of the United States, respectfully requests a jury trial on all issues.

Dated: September 3, 2008

**KIRBY McINERNEY, LLP**

_/s/ Mark A. Strauss_
Mark A. Strauss (mstrauss@kmllp.com)
Randall K. Berger (rberger@kmllp.com)
Edward M. Varga III (evarga@kmllp.com)
825 Third Avenue, 16th Floor
New York, New York 10022
Tel:  (212) 371- 6600
Fax:  (212) 751- 2540

Counsel for Relator Kenneth Karlin

**LAW OFFICE OF SHELDON V. BURMAN, P.C.**
110 East 59th Street, 23d Floor
New York, NY 10022-1304
Sheldon V. Burman, Esq. (mjburman@nyc.rr.com)

Additional Counsel for Relator